IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TINAMARIE PADILLA,

        Plaintiff,

v.                                                                                               No. CV 14-216 CG

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Tinamarie Padilla's *Motion to Reverse and Remand for Rehearing, with Supporting Memorandum* (the "Motion"), (Doc. 18), filed July 28, 2014; Defendant's *Brief of the Commissioner* (the "Response"), (Doc. 23), filed October 27, 2014; and *Plaintiff's Response to Defendants Reply to Plaintiff's Motion to Reverse and Remand for Rehearing* (the "Reply"), (Doc. 25), filed November 24, 2014.

On October 10, 2007, Sally G. Padilla applied for social security income on behalf of the Claimant, Tinamarie Padilla ("Ms. Padilla"), her minor child. (Administrative Record "AR" 226-32). She alleged Ms. Padilla's disability began September 30, 2007. (AR 226). Ms. Padilla's claim was initially denied, (AR 133-35), and again upon reconsideration. (AR 138-40). A request for a hearing was filed, (AR 141-42), and a hearing was held on July 23, 2009 before Administrative Law Judge ("ALJ") W. Thomas Bundy. (AR 92-107). Ms. Padilla was represented at the hearing by attorney Bill Gordon. (AR 114, 137). The ALJ issued an unfavorable decision on November 18,

2009, finding that Ms. Padilla was not disabled under 20 C.F.R. § 416.924(a). (AR 111-27). Through counsel, Ms. Padilla filed an application for review by the Appeals Council on December 22, 2009. (AR 170-71). The Appeals Council granted her request for review, and remanded the case to an ALJ with specific instructions on February 9, 2011. (AR 128-30). Upon remand, the Appeals Council ordered that, because Ms. Padilla was under the age of eighteen when she filed her claim for benefits, and had attained the age of eighteen prior to the date of the decision, the ALJ should conduct both a child and adult disability analysis. (AR 129). In addition, the Appeals Council ordered the ALJ to evaluate and indicate the weight given to the non-examining source opinion of J. LeRoy Gabaldon, Ph.D. (AR 129-30).

      A second hearing was held on November 25, 2011 before ALJ Barbara Licha Perkins. (AR 32-91). Ms. Padilla and her mother, Sally Padilla, testified at the hearing. (*Id*). She was represented at the hearing by attorney Edward Goodman. (AR 12). ALJ Perkins issued an unfavorable decision on December 28, 2012, finding that Ms. Padilla was not disabled as a child under 20 C.F.R. § 416.924(a), or as an adult after reaching the age of eighteen under 20 C.F.R. 416.920(g). (AR 9-27). Subsequent to the decision, the Goodman firm withdrew from representing Ms. Padilla, (AR 217), and Gary Martone was substituted. (AR 218). Through Mr. Martone, Ms. Padilla filed an application for review of the second hearing by the Appeals Council on January 29, 2013, which was summarily denied, (AR 7-9), making the decision of ALJ Perkins the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Ms. Padilla argues that the ALJ committed reversible, legal error by failing to: (1) properly weigh medical opinions in the record; (2) follow regulatory standards in assessing the child's functional equivalence; (3) make a legally sufficient credibility finding; (4) explain how she arrived at her residual functional capacity determination and evaluate all mental abilities required by unskilled work; and (5) render a determination supported by substantial evidence at step five. (Doc. 18 at 20).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ did not properly weigh the medical opinions in the record, the Court finds that the Motion should be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

Also before the Court is Plaintiff's *Motion for an Extension of Time to File Reply* ("Motion for Extension"), (Doc. 24), filed November 13, 2014. The Court being fully advised, noting that Defendant did not respond to the Motion for Extension, which operates as consent to the Motion pursuant to D.N.M.LR-Civ. 7.1(b), finds that the Motion for Extension is well-taken and shall be **GRANTED**.

## I. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not

entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income ("SSI"), a child under the age of eighteen is "disabled" when she "has a medically determinable physical or mental

impairment which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001) (citing 42 U.S.C. § 1382c(a)(3)(C)(i)). In light of this definition for disability, a three-step sequential evaluation process has been established for evaluating a child's disability claim. 20 C.F.R. § 416.924(a); *Briggs*, 248 F.3d at 1237. The ALJ "must determine, in this order, (1) that the child is not engaged in substantial gainful activity, (2) that the child has an impairment or combination of impairments that is severe, and (3) that the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404." *Briggs*, 248 F.3d at 1237 (citing 20 C.F.R. § 416.924(a)).

At the third step, in order to determine whether a child's impairment meets or equals a listed impairment, the ALJ must assess whether the impairment, alone or in combination with other impairments, medically or functionally equals a listing. 20 C.F.R. § 416.924(a). In doing so, the ALJ considers all relevant factors, including: (1) how well the child initiates and sustains activities, how much sleep she needs, the effects of structured or supportive settings; (2) how the child functions at school; and (3) the effects of the child's medications or other treatments. *Id.* at § 416.926a(a)(1)-(3); *Briggs*, 248 F.3d at 1237-38.

The ALJ must assess the child's functioning in terms of six domains: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi); *Briggs*, 248 F.3d at

1238. A child is disabled if she has "marked" limitations in two of these domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926A(d).[1]

In a claim for SSI as an adult, a person eighteen years or older establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At the first four steps of the sequential evaluation process, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[2] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, she will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1257.

---

[1] The terms "marked" and "extreme" are defined in 20 C.F.R. § 416.924a(e).
[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III. Background

In October 2007, Sally Padilla applied for SSI on behalf of her daughter, Tinamarie Padilla, allegedly due to post-traumatic stress disorder ("PTSD"), depression, and anxiety. (AR 133). Ms. Padilla reports that her psychological problems stem from being sexually assaulted at the age of 14. (AR 322, 337, 339, 534). Subsequent to the assault, she developed symptoms of depression and anxiety, including having nightmares and difficulty sleeping, being unable to concentrate, performing poorly in school, and isolating herself from others, while becoming extremely attached to her mother. (AR 327, 337, 364, 550). Ms. Padilla has received diagnoses of PTSD and varying degrees of major depression, (AR 319, 361, 439, 533), and has a history of having trouble in school and running away from home. (AR 305-08). She is currently the mother of three children. (AR 321, 459, 556).

Because Ms. Padilla was under the age of eighteen when she applied for SSI, and turned eighteen during these proceedings, the ALJ determined whether Ms. Padilla was disabled under the standards for both children and adults, beginning with the sequential evaluation process for a person under the age of eighteen. At step one, she found that Ms. Padilla had not engaged in substantial gainful activity. (AR 17). At step two, the ALJ found that Ms. Padilla had severe impairments, including PTSD and mild major depressive disorder. (*Id*).

The ALJ proceeded to step three. First, the ALJ determined that Ms. Padilla's impairments did not meet or medically equal any of the listed impairments. (AR 17). She then found that Ms. Padilla did not have an impairment or combination of impairments that functionally equaled any of the listings. (*Id*). In making her determination, the ALJ

7

considered Ms. Padilla's symptoms. (AR 18-20). Although she determined that Ms. Padilla's medically determinable impairments could reasonably be expected to produce the alleged symptoms, she found the statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with her other findings. (AR 21). The ALJ based this finding on testimony given at the hearing, teacher reports, juvenile case management reports, and medical records and opinions. (AR 19-21).

The ALJ considered the same evidence to make her disability finding. In terms of the six domains, the ALJ found that Ms. Padilla had less than marked limitations in acquiring and using information; less than marked limitations in attending and completing tasks; less than marked limitations in interacting and relating with others; no limitations in moving about and manipulating objects; marked limitations in the ability to care for herself; and less than marked limitations in health and physical well-being. (AR 21-25). Accordingly, she found that Ms. Padilla was not disabled under the Social Security Act from the alleged date of disability onset through the day she turned eighteen. (AR 25).

Next, the ALJ analyzed whether Ms. Padilla was disabled after reaching the age of eighteen. She began with step two, noting that Ms. Padilla had not developed any new impairments since attaining age eighteen, and that Ms. Padilla continues to have severe impairments. (AR 25). At step three, the ALJ determined that none of Ms. Padilla's impairments, solely or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 416.920(d).

The ALJ proceeded to step four. She found that, since attaining age eighteen, Ms. Padilla has the residual functional capacity to perform a full range of work at all exertion levels, but is limited to understanding, remembering, and carrying out simple instructions and tasks in work that is object focused. (AR 25-26). The ALJ noted that Ms. Padilla has no past relevant work, and moved on to step five. (AR 26).

At step five, the ALJ inquired whether Ms. Padilla would be able to perform any work existing in significant numbers in the national economy. (AR 26). She noted that Ms. Padilla is eighteen, and is therefore a "younger individual" in accordance with the Regulations, has a limited education, and is able to communicate in English. (*Id*). Because the ALJ found that Ms. Padilla could perform work at all exertional levels, and because her nonexertional limitation do not inhibit basic communication abilities, the ALJ determined that Ms. Padilla has not been disabled since turning eighteen. (*Id*).

## IV. Analysis

Ms. Padilla argues that the ALJ committed reversible, legal error by failing to: (1) properly weigh medical opinions in the record; (2) follow regulatory standards in assessing the child's functional equivalence; (3) make a legally sufficient credibility finding; (4) explain how she arrived at her RFC determination and evaluate all mental abilities required by unskilled work; and (5) render a determination supported by substantial evidence at step five. (Doc. 18 at 20).

The Commissioner responds that the ALJ properly considered all medical opinions and that, while there may be some contradictory evidence in the record, the ALJ's finding as to Ms. Padilla's functional equivalence is supported by substantial evidence. (Doc. 23 at 15, 18, 21-23). The Commissioner also maintains that, given the

numerous inconsistencies in the record, the ALJ's credibility determination is legally sufficient. (Doc. 23 at 19-21). Finally, the Commissioner contends that the ALJ adequately explained how she arrived at her RFC determination, and that the RFC determination is supported by favorable mental functional findings. (Doc. 23 at 23-24).

### A. Requirement to Weigh All Medical Opinions in the Record

First, Ms. Padilla argues that the ALJ failed to properly weigh medical opinions in the record. (Doc. 18 at 20). Specifically, she contends that the ALJ did not indicate or explain what weight she gave the opinion of non-examining state agency psychological consultant J. LeRoy Gabaldon, Ph.D. as the Appeals Council instructed upon remand. (Doc. 18 at 9-10). In addition, Ms. Padilla maintains that the ALJ similarly failed to weigh the opinion of examining state agency psychological consultant Finian J. Murphy, Ed.D.

The Commissioner responds that the ALJ expressly stated in her decision that she had further reviewed the opinion of Dr. Gabaldon, and that, after considering the whole child, she did not adopt his opinion. (Doc. 23 at 15). The Commissioner does not address whether the ALJ adequately explained the weight she attributed to the opinions of Dr. Gabaldon or Dr. Murphy. (Doc. 23 at 15, 18; Doc. 25 at 1).

Social Security Regulations require the ALJ to evaluate every medical opinion in the record, including the opinions of non-examining State agency physicians. *See* 20 C.F.R. § 416.927(b); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180. The Regulations define medical opinions as statements that reflect "judgments about the nature and severity of your impairment(s)." 20 C.F.R. 416.927(a)(2). Mere collections of treatment notes, including subjective complaints and treatment prescribed, do not constitute medical opinions. *Eacret v. Barnhart*, No. 04-5062, 120 Fed. Appx. 264, 267

(10th Cir. Jan. 10, 2005) (unpublished); *Moua v. Colvin*, No. 12-5161, 541 Fed. Appx 794, 797 (10th Cir. July 30, 2013) (unpublished).

Every medical source opinion should be weighed by the ALJ in consideration of the following, applicable "deference factors":

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003); *see also* 20 C.F.R. § 416.927 (c)-(d). Ultimately, the ALJ must give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that she ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119 (citations omitted). Failure to do so constitutes legal error. *See Kerwin*, 224 Fed. Appx. at 884.

### B. The ALJ's Analysis of Medical Opinions in the Record

With regard to opinion evidence in the record, the ALJ stated that she "considered opinion evidence in accordance with the requirements of CFR § 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p." (AR 21). In her decision, the ALJ discusses the specific findings of Finian J. Murphy, Ed.D, Susan Danto, M.D., and J. LeRoy Gabaldon, Ph.D., but does not adequately explain the weight she afforded their assessments.

#### 1. The Findings of Dr. Murphy and Dr. Danto

Dr. Murphy performed a psychological consultative examination of Ms. Padilla on March 23, 2007. It is undisputed that his assessment as to Ms. Padilla's overall

functioning is a medical opinion. In his report, Dr. Murphy diagnosed Ms. Padilla with PTSD and major depression. (AR 533). He noted that she has low average intelligence and "difficulty concentrating while in class and throughout most of the day due to her psychological problems." (*Id*). He gave her a Global Assessment of Function ("GAF") score of 38.³ (*Id*). The ALJ did not explain what weight she gave Dr. Murphy's opinion as to Ms. Padilla's ability to concentrate or her GAF score.

Dr. Danto also performed a psychological evaluation on October 31, 2007. (AR 360-62). Similarly to Dr. Murphy, she diagnosed Ms. Padilla with PTSD and major depressive disorder, mild, noted that Ms. Padilla's intellectual functioning is below average, and gave Ms. Padilla a GAF score of 65.⁴ (AR 361). The ALJ did not explain the weight she afforded Dr. Danto's assessment.

To be sure, "a low GAF score does not alone determine disability, but is instead a piece of evidence to be considered with the rest of the record." *Petree v. Astrue*, 260 Fed Appx 33, 42 (10th Cir 2007). Indeed, as shown by Ms. Padilla's own medical record, "a GAF score is not a one-time measure of a person's level of functioning that can be expected to remain constant."⁵ *Id*. at 41. However, the ALJ seems to adopt, or at least give significant weight to, Dr. Susan Danto's GAF score of 65, and does not provide an adequate explanation as to why she did so. While the ALJ mentions that Dr. Danto's

---

³ "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." *Lanley*, 373 F.3d at 1122 n.3 (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) [DSM–IV–TR] at 32). "A GAF of 31-40 is extremely low, and indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Salazar v. Barnhart*, 468 F.3d 615, 624 n.4 (10th Cir. 2006).
⁴ A GAF scor of "61 to70 represents only '[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" *Ledford v. Astrue*, No. 07-4234, 311 Fed. Appx 746, 754 (6th Cir. Dec. 19, 2008) (unpublished) (internal citations omitted).
⁵ Ms. Padilla also received a GAF score of 50 in November 2006. (AR 337).

GAF of 65 was assessed in October 2007, closer to the alleged disability onset date than Mr. Murphy's GAF of 38, and that Ms. Padilla seemed to be improving, she states elsewhere in her decision that Dr. Murphy's March 2007 evaluation pre-dates the alleged date of disability onset "by only seven months, and therefore, has probative value for the purposes of this Decision." (AR 12).

Furthermore, the ALJ does not otherwise engage in any discussion of the deference factors pursuant to 20 C.F.R. § 416.927 as to Dr. Murphy and Dr. Danto's assessments of Ms. Padilla's functioning or her GAF scores. The Commissioner does not argue to the contrary. Thus, the Court is unable to meaningfully review the ALJ's findings. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding that in the absence of findings supported by specific weighing of the evidence in the record, the ALJ leaves the Court unable to assess whether relevant evidence adequately supports her conclusion); *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) ("Without the benefit of the ALJ's findings supported by the weighing of this relevant evidence, we cannot determine whether his conclusion. . .is itself supported by substantial evidence.").

   2.  *The Findings of Dr. Gabaldon*

Dr. Gabaldon is a non-examining State agency physician, whose RFC assessment is a medical opinion, or medical source statement. As the ALJ stated in her decision, the Appeals Council previously remanded the case to the ALJ to further review Dr. Gabaldon's opinion. (AR 20, 129-30). Dr. Gabaldon opined that Ms. Padilla has marked limitations in the domain of interacting and relating with others. (AR 370). In her

decision, the ALJ explained that she further reviewed the opinion, but did not state the weight she gave the opinion in her analysis, or her reasons for doing so. (AR 20).

Instead, the ALJ stated that Dr. Gabaldon's assessment noted that Ms. Padilla's limitations have improved with time. (AR 20). The ALJ then opined that, considering Ms. Padilla had "ventured out, attended the state fair, and ran away and got pregnant with another man after the sexual assault" and "has a male friend that is close enough to sign the birth certificate of a child that is not his," Ms. Padilla was not as isolated as had been suggested. (AR 20). As a result, the ALJ found that Ms. Padilla had less than marked limitations in the domain of interacting and relating to others. (AR 20, 23). The Court notes that while the ALJ described Ms. Padilla's behavior as venturing out and having close male friends, the record reflects that Ms. Padilla ran away to be with a man she met on the internet, who she reports physically abused her. (AR 322, 364). Furthermore, Sally Padilla testified that her daughter initially believed the man who signed the birth certificate was the father of the child, but that after completing a DNA test they discovered he was not. (AR 68-69).

In any event, an ALJ may not substitute her own medical opinion for that of Ms. Padilla's doctors. *Candelario v. Barnhart*, No. 05-1222, 166 Fed. Appx. 379, 384 (10th Cir. Feb. 10, 2006) (unpublished) (citing *Hamlin*, 365 F.3d at 1221). Looking at the same record, no other doctor opined that the behavior the ALJ relied upon demonstrated that Ms. Padilla's interactions and relations with others were improving. For the ALJ to implicitly reject Dr. Gabaldon's opinion, and substitute it with her own, reaches beyond the role of adjudicator into the realm of the medical profession. Therefore, the ALJ did not properly weigh the medical opinion of Dr. Gabaldon as

instructed by the Appeals Council or required by the Regulations. Her failure to do so is reversible legal error.

## V. Conclusion

For the reasons discussed above, the Court concludes that the ALJ failed to properly weigh the medical opinions in the record. On remand, the ALJ should properly weigh the medical opinions, including those discussed in this Order. She should adequately explain the weight she gives each opinion as it relates to her findings. The Court does not decide any other issue raised by Ms. Padilla, as these matters are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Reverse and Remand for Rehearing, with Supporting Memorandum*, (Doc. 18), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

**IT IS FURTHER ORDERED** that Plaintiff's reply brief was timely filed on November 24, 2014.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE